UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CEDRIC DIXON, | ) |
| Plaintiff, | ) |
| | ) No. 3:20-cv-00991 |
| v. | ) |
| | ) Judge Trauger |
| METRO NASHVILLE POLICE DEP'T, *et al.*, | ) |
| Defendants. | ) |

# MEMORANDUM OPINION

Cedric Dixon, an inmate of the Davidson County Sheriff's Office in Nashville, Tennessee proceeding pro se and in forma pauperis, has filed an amended complaint under 42 U.S.C. § 1983 against John Martens, Jennifer Lee, Brian Griffen, David Elliotte, Pam Mieles, Lee McDoyle, and Karen Hunter, alleging violations of the plaintiff's civil rights. (Doc. No. 1).

The amended complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. Procedural History

The plaintiff originally filed a pro se complaint under 42 U.S.C. § 1983 against twenty-four defendants, alleging violations of his civil rights. (Doc. No. 1). By order and memorandum opinion entered on December 23, 2020, the court found that the plaintiff's claims pertaining to his state criminal proceedings are barred by the doctrines of issue and claim preclusion and those claims would be dismissed by subsequent order.[1] (Doc. Nos. 16 and 17). The court granted the

---

[1] The court found, that due to the length and obfuscation of the complaint, it would be laborious to parse each page to identify every defendant against whom the plaintiff asserts claims related to his state criminal proceedings; further, because the court directed the plaintiff to file an amended complaint, the court would dismiss all appropriate defendants after the receipt and screening of the amended complaint. (Doc. No. 17 at 3 n.1).

1

plaintiff's motions to amend the complaint (Doc. Nos. 5, 6, 8) and permitted the plaintiff to file a single amended complaint that complies with Federal Rule of Civil Procedure Rule 8, <u>except that</u> the plaintiff should not include any allegations pertaining to his state criminal charges or proceedings. (Doc. No. 17). The plaintiff now has submitted that amended complaint. (Doc. No. 25).[2]

## II. PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), a court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id*. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id*. § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[2] The amended complaint filed by the plaintiff as Docket No. 33 is identical in all aspects to the "Affidavit of Complaint re 1 Complaint" (Doc. No. 25), which the court designated as the operative amended complaint by order entered on May 7, 2021 (Doc. No. 32).

2

liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

A court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III. Section 1983 Standard

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## IV. Alleged Facts

The amended complaint alleges that psychiatric nurse John Martens and "psych" social worker Jennifer Lee engaged in racial discrimination, medical malpractice, and neglect towards the plaintiff. Further, the amended complaint alleges that Martens and Lee conspired with Brian Griffen and David Elliotte to violate the plaintiff's Eighth Amendment rights by conducting medicinal experiments on the plaintiff in an attempt to keep him from representing himself in court proceedings. Martens forced the plaintiff to take "Depokat"[3] which has caused the plaintiff to experience blurred visions, headaches, and dizziness. When the plaintiff complained about the medication's side effects, Martens doubled the dosage, which caused the plaintiff's condition to worsen. Martens later changed the medication to "SeraQuil",[4] which has caused the plaintiff's "heart about to bust." (Doc. No. 25 at 1). On January 19, 2021, the plaintiff's heart rate went up to 106 and, by lunch the next day, to 116. On January 21, 2021, Martens changed the plaintiff's medication to Zyprexa and, soon after the plaintiff took the first dose, he experienced bladder and kidney pain, and he is now urinating blood. According to the plaintiff, "Nothing is being done about John Martens experimenting on me, using me for a lab rat, which violates my constitutional rights." (*Id.* at 1).

The amended complaint further alleges that Martens, Lee, and Pamela Mieles refuse to conduct a competency test on the plaintiff or let him leave unless he permits them to experiment on him with medications. According to the plaintiff, only Whites are allowed to leave the facility. In addition, Whites are given competency tests but not Blacks. The amended complaint suggests

---

[3] It is likely the plaintiff means Depakote, which is an anticonvulsant used to treat seizure disorders, certain psychiatric conditions, and migraine headaches. *See* https://www.webmd.com/drugs/2/drug-1788/depakote-oral/details (last visited on May 19, 2021).

[4] It is likely the plaintiff means Seroquel, which is a medication used to treat mental/mood conditions. *See* https://www.webmd.com/drugs/2/drug-4718/seroquel-oral/details (last visited on May 19, 2021).

that the plaintiff is Black. He alleges that Lee refuses to obtain his legal work and other materials for him which denies him access to the courts. Lee also reads his legal mail without his permission. Griffen is "having the court force another lawyer" on the plaintiff. (*Id*. at 3). The plaintiff wants to choose his own attorney.

The plaintiff has contacted Lee McDoyle and Karen Hunter, and "nothing have [sic] been done." (*Id*.) The plaintiff has filed four grievances, and no one has taken any action on those grievances. On January 22, 2021, Hunter told the plaintiff that she does not handle medical malpractice, neglect, or abuse cases "but the Board says that's her job." (*Id*. at 5). McDoyle visited the plaintiff and said he would file a complaint for the plaintiff but has not done so.

## V. Analysis

The amended complaint alleges several claims against multiple defendants.[5] The court will address each claim in turn.

### A. Racial Discrimination Claims

The amended complaint alleges that defendants Martens, Lee, and Mieles violated the plaintiff's Fourteenth Amendment right to be free from discrimination in violation of 42 U.S.C. § 1983. Specifically, the amended complaint alleges that these defendants administer competency tests to Whites, which enables Whites to leave the facility, but not Blacks. The plaintiff has been at the facility for over a week and has not received a competency test. He points to Martens having administered a competency test to a "white guy in 7 days but not [the plaintiff]." (Doc. No. 25 at

---

[5] To the extent that any federal claims against these defendants remained after the court's prior order and memorandum, the plaintiff now abandons his federal claims against the Metro Nashville Police Department, Kyle D. Parks, DDC Booking Officers, DDC Pretrial Officers, Commissioner Nashville DDC, Shaw Cunningham, A. Cordova, DDC Classification, Nashville Criminal Courts, Mylissa Blackburn, R. Warren, Nathan Cates, f/n/u Hendry, f/n/u Hilson, f/n/u William, Elaine Heard, Tim Dewyer, Diana Hurley, T.B.I., M.B., Aron Holt, and U.S. Marshall.

4). While never stating it outright, the complaint intimates that the plaintiff is Black. (*Id*. at 2) ("This is Racial Discrimination.").

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause is "in essence 'a direction that all persons similarly situated should be treated alike.'" *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (quoting *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985)). Thus, the threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ*., 470 F.3d 250, 260 (6th Cir. 2006). A plaintiff must allege that the government treated them disparately as compared to "similarly situated persons." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011); *see also Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (explaining that an "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects"). "[T]o establish an equal protection violation, a plaintiff must establish more than differential treatment alone – a discriminatory intent or purpose is required." *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 264-65 (1977)); *Pleasant-Bey v. Tennessee*, No. 3:19-cv-00486, 2020 WL 707584, at *9 (M.D. Tenn. Feb. 12, 2020). Thus, a plaintiff states an equal protection claim by alleging "that (1) he was treated disparately from similarly situated prisoners, and (2) the disparate treatment is the result of intentional and purposeful discrimination." *Davis v. Heyns*, No. 17-1268, 2017 WL 8231366, at *4 (6th Cir. Oct. 16, 2017) (quoting *Robinson*, 615 F. App'x at 314-15).

Here, liberally construing the allegations of the complaint, the plaintiff contends that he is being treated differently than other inmates because of his race. However, other than referencing

6

one "white guy", the plaintiff provides no information about any comparators; therefore, the court is unable to determine if this White inmate was similarly situated to the plaintiff. Further, the plaintiff has not pled any specific factual allegations supporting a plausible inference of discrimination. Although the complaint generally alleges that the plaintiff believes certain defendants discriminated against him because of his race, the complaint does not include any specific allegations as to what led the plaintiff to believe those actions were because of the plaintiff's race. "It is incumbent upon a prisoner asserting an equal protection claim of racial discrimination to prove the existence of some purposeful discrimination against him based upon his race." *McClesky v. Kemp*, 481 U.S. 279, 292 (1987). The plaintiff here has not done so. Consequently, the court finds that the complaint fails to state colorable equal protection claims under the Fourteenth Amendment against defendants Martens, Lee, and Mieles.

**B.     Cruel and Unusual Punishment**

Next, the complaint alleges that defendant Martens is violating the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment in violation of 42 U.S.C. § 1983 by forcing the plaintiff to take certain medications with unwanted and dangerous side effects. In addition, the plaintiff believes Martens is "experimenting" on the plaintiff and treating him as a "lab rat." (Doc. No. 25 at 1).

The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that

the prisoner had a medical need that was "sufficiently serious." *Id*. (quoting *Farmer*, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

Under these standards, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. In addition, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. In sum, generally speaking, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

Here, while the plaintiff may believe that Martens is "experimenting" on the plaintiff and using him as a "lab rat," this allegation is wholly unsupported. The allegations concerning the drugs Martens has prescribed for the plaintiff reflect a dispute over the adequacy of treatment or a difference of opinion regarding diagnosis or treatment, neither of which rises to the level of an Eighth Amendment violation. *Westlake,* 537 F.3d at 860 n.5. The plaintiff acknowledges that he has received medical treatment; he just disagrees with the particular treatment provided by Martens, including the medications prescribed. However, a prisoner's difference of opinion regarding diagnosis or treatment does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. Consequently, the allegations against Martens will be dismissed for failure to state § 1983 claims upon which relief can be granted.

**C.     Conspiracy**

Next, the amended complaint alleges that Martens conspired with defendants Lee, Griffen, Elliotte, and Mieles to conduct experiments on the plaintiff in an effort to keep him from effectively representing himself in legal proceedings. As the Sixth Circuit Court of Appeals has explained:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). Although circumstantial evidence may prove a conspiracy, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim

9

under § 1983." *Id*. (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). That pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). An assertion, unaccompanied by supporting facts, that parties conspired with each other is a legal conclusion that a court need not accept as true. *Id*. at 563-64 (collecting cases). Allegations of "a plan or agreement to violate [the plaintiff's] constitutional rights" is required. *Id*. at 564.

Here, the plaintiff's allegation that defendants conspired with each other to experiment on the plaintiff for the purpose of impairing his ability to represent himself in legal proceedings is entirely devoid of supporting facts. The amended complaint does not sufficiently allege a claim for civil conspiracy. Thus, these claims will be dismissed against defendants Lee, Griffen, Elliotte, and Mieles.

To the extent that the plaintiff attempts to bring claims under 42 U.S.C. § 1985, a § 1985 claim requires, among other things, that the accused conspirators enter the conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983) (internal quotation marks omitted)). Thus, a plaintiff is required to "allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action." *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 367 (6th Cir. 2012) (quoting *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992)). Furthermore, a plaintiff must allege "that the alleged conspirators shared a common discriminatory objective." *Pahssen,* 668 F.3d at 368.

Construing his pro se allegations liberally, the plaintiff alleges that defendants Lee, Griffen, Elliotte, and Mieles conspired together in a common scheme or plan and to act, and the plaintiff believes their actions were racially motivated. These two allegations in isolation, however, are

insufficient to state a § 1985 conspiracy claim. The complaint does not contain the required allegation that defendants were motivated by a shared racial animus and, based upon that animus, acted together to treat the plaintiff differently from another similarly-situated person. Thus, while the complaint raises the issue of racial discrimination, it does not plausibly allege that the defendants acted together with the purpose of discriminating against the plaintiff because of his race. Because there are no colorable claims that defendants conspired with the required discriminatory intent, the plaintiff's § 1985 claims must be dismissed for failure to state a claim.

### D. Access to the Courts

The amended complaint alleges that defendant Lee, a social worker, refuses to obtain the plaintiff's legal work and other materials for him and reads the plaintiff's legal mail without his permission. (Doc. No. 25 at 3). These actions, claims the plaintiff, violate his right of access to the courts.

The law is well settled that a prisoner has a First Amendment right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821-823 (1977). The right of access to the courts requires prison officials to ensure that inmates have access to the courts that is "adequate, effective and meaningful." *Id*. at 822. However, it is not enough for a plaintiff simply to claim that he was denied access to the courts. To state a claim on which relief may be granted, a plaintiff must show that a defendant's conduct in some way prejudiced the filing or prosecution of a legal matter. *Walker*, 771 F.2d at 932; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

In addition, "[a] prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873-74 (6th Cir. 2003) (citing *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). A prison's security needs do not automatically trump

a prisoner's First Amendment right to receive mail, "especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Sallier*, 343 F.3d at 873-74 (citing *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). "Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. Indeed, even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney." *Id*. at 874. A plaintiff cannot state a claim based on jail staff reading his legal mail unless he pleads prejudice stemming from the asserted violation, such as the late filing of a court document or the dismissal of an otherwise meritorious claim. *See Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010); *Loyde v. Wilkes*, No. 3:16-cv-00758, 2016 WL 3058484, at *5 (M.D. Tenn. May 31, 2016).

Here, the plaintiff has not alleged that Lee prevented him from receiving or sending legal mail. Neither has he alleged that he has been prejudiced in filing the instant lawsuit or has suffered any litigation-related detriment to either this case or another case as a result of defendant Lee's actions. In fact, in this case alone, the plaintiff successfully has submitted a complaint with seventeen pages of exhibits (Doc. No. 1), an application to proceed in forma pauperis (Doc. No. 2), an amended complaint (Doc. No. 30), and multiple motions, letters, affidavits, and notices (Doc. Nos. 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 18, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, 30). Because the plaintiff has not shown that he sustained an actual injury in his efforts to litigate this case or another case, his access to courts claims fail to state claims upon which relief may be granted. These claims, therefore, will be dismissed.

### E. Right to Counsel

The amended complaint alleges that defendant Griffen "is having the court force another lawyer" on the plaintiff. (Doc. No. 25 at 3). The plaintiff wants to choose his own attorney and believes Griffen's actions violate the plaintiff's Sixth Amendment right to counsel.

The Supreme Court has held that "an indigent's right to appointed counsel exists only where the litigant may lose his physical liberty if he loses the litigation." *Lassiter v. Dep't of Social Servs.,* 452 U.S. 18, 25 (1981). Thus, unlike criminal proceedings, there is no constitutional right to an appointed counsel in a civil action, such as this action. *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977), aff'd, 595 F.2d 1227 (6th Cir. 1979); *see Williamson v. Autorama, Inc.,* No. 91-5759, 947 F.2d 947 (6th Cir. 1991) (citing *Willett* favorably). To the extent the plaintiff's allegation relates to his state criminal proceedings, a "'defendant relying on court-appointed counsel has no constitutional right to the counsel of his choice.'" *United States v. Powell*, 847 F.3d 760, 780 n. 12 (6th Cir. 2017) (quoting *Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007)).

Without more, the allegations of the amended complaint fail to state claim upon which relief can be granted with respect to the plaintiff's right to counsel. This claim will be dismissed.

### F. Failure to Respond to Grievances

The amended complaint alleges that the plaintiff has filed four grievances, and no one has taken any action on those grievances. However, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."). *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (to establish the liability of any individual defendant, the plaintiff must show that that particular defendant was personally involved in the activities

giving rise to the plaintiff's claims); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 Fed. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.").

The amended complaint also alleges that defendants Lee McDoyle and Karen Hunter have not taken legal action on the plaintiff's behalf. While it is not made clear, it appears that McDoyle and Hunter are attorneys. However, the plaintiff does not explain how these individuals, even assuming they are attorneys, acted under color of state law in violation of the plaintiff's constitutional rights. These allegations fail to state § 1983 claims upon which relief may be granted.

### G. Medical Malpractice

Finally, to the extent the amended complaint could be construed to allege state law claims of medical malpractice and/or neglect against any named defendant, 28 U.S.C. § 1367(a) provides that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .

*Id*. The district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it ha[d] original jurisdiction . . . ." *Id*. at § (c)(3).

Having dismissed the plaintiff's federal claims, the court declines to exercise supplemental jurisdiction to hear any state law claims set forth in the complaint. As such, any state law claims asserted in the complaint will be dismissed without prejudice, to be filed, if the plaintiff so chooses,

in a Tennessee state court. The court makes no findings regarding the merit or timeliness of such claims.

## VI. Conclusion

Having screened the amended complaint pursuant to the PRLA, the court finds that the plaintiff's federal claims must be dismissed for failure to state claims upon which relief may be granted under 42 U.S.C. § 1983. All federal claims and defendants named with respect to those claims will be dismissed. 28 U.S.C. § 1915(e)(2). However, as to the plaintiff's state law claims, the court declines to exercise supplemental jurisdiction and will dismiss those claims without prejudice, should the plaintiff wish to pursue them in state court.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge